IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JEWEL LAMAR EASTER,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 2:05CV713-SRW |
| ) | (WO) |
| JO ANNE B. BARNHART  ) | |
| COMMISSIONER OF SOCIAL  ) | |
| SECURITY,  ) | |
| ) | |
| Defendant.  ) | |

**MEMORANDUM OPINION**

Plaintiff filed an application for Title II disability insurance benefits in 1992. In a 1994 decision, an administrative law judge found the plaintiff to be disabled due to right SI joint dysfunction, right piriformis syndrome, obesity, status-post lumbar laminectomy, post laminectomy syndrome, somatiform pain disorder with prominent conversion features and borderline intellectual function. (R. 223-31). In a periodic review in March 1998, the Social Security Administration determined that plaintiff's disability continued. (R. 235). In April 2003, the agency notified the plaintiff that it had determined that her disability ceased as of April 2003 due to an improvement in her condition since her last favorable determination. (R. 236-37). In October 2003, a disability hearing officer affirmed the determination to cease disability payments based on an improvement in plaintiff's medical condition. (R. 244-53). Plaintiff requested a hearing before an ALJ. (R. 257-58). After a hearing on September 22, 2004, the ALJ determined that plaintiff had experienced medical improvement related to her ability to work since the most recent favorable disability determination and that her disability

ceased as of April 2003. (R. 17-36). The plaintiff appealed the decision to the Appeals Council, which denied review (R. 7-11), so the decision of the ALJ became the final decision of the Commissioner. See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The case is before this court for review pursuant to 42 U.S.C. §§ 405(g).[1] Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

However, under 42 U.S.C. § 423(f)(1)(A), benefits may be terminated if there has been (1) a medical improvement in the individual's impairment, which improvement (2) is related to the person's ability to work, and (3) leaves the person able to engage in substantial gainful activity.

To make this determination the Commissioner employs a sequential evaluation process:

(1) Is the person presently unemployed?

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge (Doc. ## 8, 9).

2

(2) If so, does the person have impairments that meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(3) If not, has there been medical improvement resulting in a decrease in medical severity?

(4) If so, is the improvement related to the person's ability to work?[2]

(5) If so, is the person's current impairment severe?

(6) If so, is the person unable perform the kind of work he or she performed in the past?

(7) If so, does the person retain the residual functional capacity to do other jobs that exist in substantial numbers in the national economy?

See 20 C.F.R. §§ 404.1594(f).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the

---

[2] Other steps in the evaluation involve the exceptions found in 20 C.F.R. 404.1594(d) and (e), such as earlier benefits obtained by fraud and a claimant who cannot be found. However, these exceptions have no relevance to the current case.

>reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

## Discussion

The plaintiff states the issue as "[w]hether a finding that disability ceased was properly made under 20 C.F.R. Part 404. 1594," apparently contending that the ALJ's December 23, 2004 decision is not supported by substantial evidence. She argues that, "[i]n light of the . . . evidence, it is difficult to determine how the ALJ could have followed his own guidelines and determined that Claimant had experienced enough improvement in her long term medical condition to return to any semblance of substantial gainful activity." (Doc. # 11, p. 10).

The ALJ found that the plaintiff was not engaging in substantial gainful activity and that, while she has severe impairments, she does not have an impairment or combination of impairments that meets or equals the listings. Plaintiff does not dispute these findings and there is no indication in the record that the ALJ erred as to these conclusions. Plaintiff does, however, take issue with the ALJ's conclusion that she has experienced medical improvement related to her ability to work since the most recent favorable disability decision, and his findings that she was able to perform her past relevant work from April 2003 to January 31, 2004 and other work existing in significant numbers in the regional or national economies after January 31, 2004.

The most recent favorable disability decision occurred on March 17, 1998. On February 2, 1998, a consulting clinical psychologist diagnosed plaintiff with major depression secondary to physical illness. (R. 313). The disability continuation decision in March 1998 was based, in part, on plaintiff's mental impairment ("Affective/Mood disorders"). (R. 235). In a March 27, 2003 consultative psychological evaluation, Dr. King, a clinical psychologist, did not diagnose any mental health impairment. He stated, "I found no evidence whatsoever during the interview to support any diagnosis involving major depression," and determined that "[t]here is no reason why she shouldn't be able to do tasks, at minimum, that are simple to mildly varied in nature with repetition and supervision if she chooses to do so." (R. 320).

In February 1998, Dr. Patrick Ryan, a neurologist, found that plaintiff had a positive straight leg raise on the right. An MRI showed a left paramedial disk herniation at L5-S1 and post-operative scar formation on the right at L4-5. Plaintiff then complained of pain in her lumbar spine radiating to both hips and legs. (R. 337).

In March 2003, plaintiff was examined by Dr. Alan Babb. She reported that she continued to have back pain and it was radiating down her right leg. Dr. Babb observed that plaintiff had no reproducible pain findings. He further noted that her "ambulation is normal," she "can get on and off the exam table easily," she "has no motor or sensory deficits" and her "[p]eripheral reflexes are normal." (R. 323). He stated that "she does have a cane although this is not required at all." (Id.). He noted that "[a]t this time all I have to go by is her subjective complaints of back pain although she has no neurologic deficits and ambulates and

5

gets around easily on her own."  (Id.).  Dr. Babb expressed an opinion that plaintiff's "disability, if any, is trivial at best."  (R. 324).  Also in March 2003, the consultative psychologist observed that plaintiff "had a four-point cane which she literally carried with her by the handle and did not use it for support."  (R. 318).

In June 2003, plaintiff again visited Dr. Ryan.  He noted a positive straight leg raise on the right, hypesthesia bilaterally, diminished reflexes at the ankles and knees, and palpable spasm in the lumbar spine.  Plaintiff complained of back pain with right sciatica.  (R. 334-35).  An MRI performed that same month showed no evidence of recurrent herniation, right laminectomy defect at the L4-5 level, moderate degenerative changes of the facet joints, and slight broad based posterior bulge at the L5-S1 level.  (R. 349).

In January 2004, plaintiff sought treatment from Alabama Orthopaedic Specialists. Dr. Wells administered a trochanteric bursa injection. (R. 384).  He referred plaintiff for an electrodiagnostic study and MRI, which were conducted on February 4, 2004.  The electrodiagnostic study showed evidence of L4-L5 radiculopathy, and no evidence of a peripheral neuropathy or entrapment neuropathy in the lower extremities.  (R. 361).  The MRI showed the previous right laminectomy, "a new left paracentral disc protrusion at this level since the previous MRI examination in June 03 that has some mild mass effect on the anterolateral aspect of the thecal sac and most likely abuts the exiting left L5 nerve root," and "significant degenerative disc disease at L4-5 and L5-S1."  (R. 367).  On February 6, 2004, plaintiff returned to Alabama Orthopaedic Specialists and was examined by Dr. Davis.  As to plaintiff's history, Dr. Davis reported:

> This is a 39-year-old who gives about a month to 2-month history of back and left lower extremity pain. Reportedly since December she started having some pain in her left lower extremity. She has had a previous surgery back in 1992 by Dr. Ryan, L4-5 disk, and did very well up until about 1998. Actually really when questioning her no real pain until this recent exacerbation in December. She has seen Dr. Wells and Dr. Miller. She has had a greater trochanteric injection and this has failed to provide any relief.[3] She complains of pain in the small of her back and pain that goes to her buttocks and then down on her calf. She describes it as a tingling, burning pain. She denies really any right lower extremity complaints. She has taken some Naprosyn and methocarbamol and this has failed to provide any long-term relief. She has had MRIs and EMGs done. She says that when she walks she feels like her legs get a little weak, more on the left than the right.

(R. 384). With regard to her physical examination, he stated:

> This is a pleasant, well-developed, well-nourished female who ambulates without an antalgic gait. She is able to ambulate on her toes and her heels without any difficulty. She is able to tandem gait. Her lumbar spine has a well-healed surgical scar. It is nontender in the midline. There are no step-offs. She has some mild paravertebral tenderness, but she is able to forward flex and bring her fingertips to her ankles. She extends 25% of normal. She has symmetric lateral rotation and symmetric lateral bending. Her bilateral hips, knees, and ankles have a non-irritable range of motion, 5/5 strength, and her deep tendon reflexes are symmetric. The patient has decreased sensation on the anterolateral aspect of the leg and dorsum of the left foot. She has a negative sitting and lying straight leg raise.

(R. 383).

On May 20, 2004, Dr. Kahing Chan performed a consultative neurological examination. He conducted an electrodiagnostic study on that day and concluded, "This test shows normal EMG and NCV. There is no electrophysiological evidence of myopathy or neuropathy in left peroneal and posterior tibial nerves, superficial peroneal and sural sensory

---

[3] An office note written four days earlier states, "Ms Easter phoned to say the [left trochanteric] injection has helped but she does still have a little pain." (R. 385).

nerves, lumbar plexopathy, motor neuron disease or bilateral L3 to S1 radiculopathy." (R. 354). Dr. Chan stated, "After the examination, it is my opinion that she will be able to do work-related activities on sitting position; there is no difficulty in lifting, carrying and handling objects. Because of her chronic pain in the lumbar paraspinal muscles, she might have difficulty in doing frequent and prolonged standing, walking, stooping, bending and overhead reaching." (R. 353). He completed a physical residual capacity form indicating that plaintiff could frequently lift 15 pounds and occasionally lift 25 pounds, and including other restrictions. (R. 357).

Plaintiff argues that the ALJ disregarded "not only Plaintiff's testimony but that of long term treating sources that Claimant suffers from chronic intractable back pain that precludes all work and has done so since the grant of her benefits in May of 1994." (Doc. # 11). The court has found no opinion of a treating source so concluding. To the contrary, plaintiff's treating physician, Dr. Davis, noted that plaintiff had "no real pain until this recent exacerbation in December [2003]." (R. 384). Plaintiff reported in June 2003 that Dr. Ryan had put her in physical therapy but had not put any limitations on her at that time. (R. 292).[4]

---

[4] Plaintiff accurately notes that Dr. Ryan was treating plaintiff at the time she was initially awarded benefits and that he "continued to treat Plaintiff with treatment records through June 24, 2003." (Doc. # 11, p. 9). As the ALJ pointed out in his decision, when Dr. Ryan saw plaintiff on February 4, 1998, he noted that he had not seen her since 1995. (R. 337). He had examined her once in April 1995; he last saw her previously in 1993. Thus, in the more than four years between December 1993 and February 1998, Dr. Ryan saw plaintiff once. Dr. Ryan examined plaintiff on February 25 and March 11, 1998 and then did not see her again until June 2003, five years later. (R. 335-37). Contrary to plaintiff's argument, the record includes no opinion from Dr. Ryan that plaintiff's condition precludes all work and has done so since May 1994.

The ALJ found that plaintiff has impairments that could reasonably be expected to produce some pain and discomfort. However, he found that plaintiff's testimony of disabling pain and functional restrictions was disproportionate to the objective medical evidence and was only partially credible. The ALJ found that plaintiff suffers a moderate degree of pain. In his decision, he noted plaintiff's testimony that her legs go out when she tries to maneuver and get around and that she uses a cane; he also noted Dr. Babb's observation that plaintiff was "walking with a cane that she got on her own," but that "the cane was not necessary for ambulation" and her "ambulation was normal." He cited Dr. Babb's report that plaintiff had "no reproducible pain findings," "no motor or sensory deficits," and could get "on and off the exam table easily." The ALJ further observed that, on February 2, 2004, plaintiff reported that her January 30 trochanteric injection had helped but that she was still having "a little pain," while during a visit four days later, she reported that the trochanteric injection failed to provide any relief. The ALJ noted that during the February 6, 2004 visit with Dr. Davis, plaintiff related "no real pain" until the exacerbation of her condition in December 2003. The ALJ further observed that the reports and findings of Dr. Ryan, plaintiff's treating neurologist, do not indicate that plaintiff is unable to perform basic work-related activities; in 1993, he expressed the opinion that she could then engage in light work, and in June 2003, he indicated that he MRI did not evidence any recurrent disk herniation, but only moderate degenerative changes. The ALJ also noted plaintiff's hearing testimony that she can only bend to a certain point and cannot stoop, but can stand 45 minutes at a time and four hours in an eight-hour day; sit two hours at a time and eight hours in an eight-hour day; walk one

9

hour at a time and seven hours in an eight-hour day, and can carry up to twenty pounds. The ALJ's credibility determination comports with applicable legal standards and is supported by substantial evidence.

The ALJ found that plaintiff's condition had improved since the favorable disability determination in 1998 and that, from April 2003 to January 31, 2004, she retained the residual functional capacity to perform her past relevant work as a cleaner, retail cashier, and assistant manager. He further concluded that although plaintiff experienced a decline in her condition in February 2004 – as then evidenced by an MRI showing a new left paracentral disc protrusion at L4-5 that was not present on the June 2003 MRI – she still retained the residual functional capacity to perform other work existing in significant numbers in the regional and national economies.

As the Commissioner argues, two physicians have expressed opinions – one in March 2003 and another in May 2004 – that plaintiff is able to perform activities consistent with full-time work. Additionally, the record includes a psychological examination report indicating that plaintiff no longer suffers from depression. The ALJ's conclusion that plaintiff has experienced medical improvement related to her ability to work is supported by substantial evidence. The ALJ's determination as to plaintiff's residual functional capacity is also supported by substantial medical evidence of record, particularly the examination and report of Dr. Chan. The ALJ's findings regarding plaintiff's ability to perform her past relevant work and, after a deterioration in her condition, other jobs existing in significant numbers is supported by vocational expert testimony.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate judgment will be entered.

Done, this 16th day of January, 2007.

                                          /s/ Susan Russ Walker
                                          SUSAN RUSS WALKER
                                          UNITED STATES MAGISTRATE JUDGE